REID, Judge.
This action arose from an automobile accident occurring on May 22, 1965, in the Parish of Pointe Coupee. Plaintiffs are John L. Hays and Rose Hays who were guest passengers in a 1963 Plymouth being *579 operated by the defendant, Homer W. McLeod. From the evidence introduced, it appears that Mr. McLeod failed to stop for a stop sign at the intersection of Louisiana Highway 983 and Louisiana Highway 416, and as a result was struck by a 1965 Chevrolet proceeding along Louisiana Highway 416. The case was heard on August 23, 1966, and on December 5, 1966, judgment was rendered finding the defendant liable for the plaintiffs’ damages. John L. Hays was awarded $7,500 for pain, suffering, and disability as a result of the injuries which he sustained and received $2,400.55 for the special damages sustained as a result of his and his wife’s injuries. Mrs. Rose Hays was awarded $1,500 for her pain, suffering, and disfigurement. Plaintiffs filed an application for a new trial based upon the insufficiency of the award and which said application was denied. Devolutive appeal was taken also alleging insufficiency of damages and the appellee, Homer W. McLeod, filed an answer asking that the appellants be cast for all costs of the appeal and asked for a judgment in his favor in the amount of $1,500 as damages for a frivolous appeal.
I The appellant assigned as errors the ' following:
(1) The trial court erred in assessing low damages for the severe injuries.
(2) The trial court erred in waiting for in excess of three months to decide the case from the date of trial until decision thus denying plaintiffs a fair decision.
Since the principal issue is that of quantum, we will deal principally with the injuries sustained by the plaintiffs. The pertinent facts in this regard are as follows :
On May 22, 1965, shortly after the accident, Mr. John L. Hays was treated by Dr. James Lee Christopher at Sisters of St. Joseph Hospital in New Roads, Louisiana. It appears that the injuries sustained by Mr. Hays were lacerations of the forehead and left eyebrow and also to the posterior area of the scalp on the right side. He also sustained a laceration over the left elbow which resulted in his triceps tendon being severed. Dr. Christopher also discovered some subcutaneous emphysema on the left side of Mr. Hays’ chest extending into his^neck and his axil-la. It was also discovered that Mr. Hays suffered fractures of the third, fourth, fifth, sixth, seventh, and eighth ribs of the left side. Dr. Christopher also noted the possibility of a small amount of pneu-mothorax on the left side but felt that it was not enough to impair his respiration. It was.also noted that Mr. Hays! ulna nerve was bruised at the site of the laceration on his left arm. Mr. Hays’ triceps tendon was sutured, his left arm was placed in a cast or posterior splint, the lacerations of the scalp and forehead were likewise sutured and sedation was administered. He remained in the Sisters of St. Joseph Hospital in New Roads from the date of the accident, May 22, 1965, until May 26, 1965, when he was transferred to the Lane Memorial Hospital in Zachary under the care of Drs. Martin and Brown. He remained in the Lane Memorial Hospital until June 12, 1965, at which time he was discharged. Subsequent to his discharge, Mr. Hays continued to be treated by Dr. Brown for approximately two and one-half weeks until July 2, 1965.
In making a determination as to the sufficiency of the judgment, it is necessary to consider each injury sustained by Mr. Hays separately. It is the contention of the appellant that he received permanent residual injuries causing pronounced disability of the left shoulder, elbow and hand and that this disability was estimated by Dr. William E. Smith as being ten per cent disability of the left shoulder and a fifteen per cent disability of the left elbow together with pain and discomfort associated with the scarring about the ulna nerve. The appellant also contends that there is a possibility that future surgery will be needed to remove scar tissue at the elbow and around the ulna nerve. In pray *580 ing for an increase in the judgment, the appellant cites the case of Lloyd v. T. L. James & ^Company, La.App., 178 So.2d 370, in which’'fifteen per cent disability of the left arm resulted in an award of $10,000 plus special damages in the amount of $3,100 or a total of $13,100. In the Was-com case, the claimant sustained a severe cerebral concussion along with the injury to his left arm and was hospitalized for a total of 17 days. During the first 10 days, he underwent periods of semi-consciousness. It was also necessary to perform open surgery on his arm and to place a permanent bolt and plate so that it would heal properly. All this resulted in a fifteen per cent permanent disability of the arm. In the present case, the claimant alleges a ten per cent disability of the left shoulder and fifteen per cent disability of the left elbow. However, there seems to be some hesitancy on the part of the doctors testifying on behalf of Mr. Hays to definitely relate the disability in his shoulder to the accident. The testimony reveals that at the time of the accident, Mr. Hays did not make any complaint to Dr. Christopher with regard to any pain in his left shoulder and indeed no X-rays of his left shoulder were taken. Dr. Brown, the personal physician of Mr. Hays, also testified that to the best of his recollections Mr. Hays never complained of any pain in his left shoulder until sometime in November, 1965. Further, it was the testimony of Dr. Smith that the condition that Mr. Hays was suffering was Tenosynovitis of the biceps tendon. This condition, according to the testimony of Dr. Smith, most commonly occurs degeneratively and seldom occurs relative to a traumatic injury.
As to the lacerations sustained by Mr. Hays, it was brought out that these lacerations were sutured by Dr. Christopher and that the sutures were removed by Dr. Brown sometime after his being discharged from the Lane Memorial Hospital. It is not brought out exactly how long it took these lacerations to heal, but the record does indicate that by November, 1965, they were completely healed.
The injuries to Mr. Hays’ chest consisted of fractured ribs, pleural effusion and subcutaneous emphysema. The record indicates that while the X-rays reveal that the third, fourth, fifth, sixth, seventh, and eighth ribs were fractured and that there was some small amount of displacement, none of the fractures were open and it was not necessary to immobilize the ribs or to provide any type of splinting. It was estimated by Dr. Christopher that the fractured ribs would heal in three or four weeks and Dr. Brown testified that at the time of Mr. Hays’ release on July 2, 1965, there was a complete recovery of the rib fractures.
As to the pleural effusion, it was brought out that it was necessary for Dr. Brown to tap Mr. Hays’ chest to remove the fluid and that medication was prescribed to absorb the remainder of the fluid. Also, it must be brought out that at the time Mr. Hays was discharged on July 2, 1965, that he had completely recovered from this condition, also.
As to the subcutaneous emphysema, it was not clear whether this condition remained at the time Mr. Hays was discharged, but in any event, Dr. Brown did not consider this to be any serious incapacity and didn’t expect Mr. Hays would continue to have any difficulty with this condition. Relative to the lacerations above the left elbow resulting in the severance of the left triceps tendon, Dr. Christopher testified that he had repaired the tendon and placed- the arm in a posterior splint.
Upon Mr. Hays’ discharge from the Lane Memorial Hospital in Zachary on June 12, 1965, by Dr. Brown, the cast or splint was removed from Mr. Hays’ left arm and the sutures were removed from his elbow. At this time, Mr. Hays did suffer some limitation of extention and flexion of his left elbow. Subsequent to his being discharged from Dr. Brown's care, Mr. Hays received some 25 physical therapy treatments at our Lady of the Lake Hospital beginning July 6, 1965, and ending September 3, 1965. In November, 1965, when Mr. Hays was *581 examined by Dr. Christopher, Dr. Christopher determined that the triceps tendon had been satisfactorily repaired and that it had healed. Dr. Christopher did note some slight limitation of supination of the left forearm or the limitation of some fifteen per cent. Later in December, 1965, Mr. Hays was again examined by Dr. Brown who concluded that there was no loss of motion in his left elbow and complete supination of his left forearm. In July, 1966, Mr. Hays was examined by Dr. William E. Smith, an orthopedic surgeon, and it was Dr. Smith’s opinion that Mr. Hays had lost some ten degrees of flexation of the left elbow and some five degrees of supination of the left forearm, this amounting to approximately fifteen per cent disability of the left elbow. In taking all of this testimony into consideration, the Trial Court saw fit to award Mr. Hays $7,500 for his injuries.
As to the injuries sustained by Mrs. Hays, it appears that she received a laceration of the left scalp extending to her eyebrow, a laceration on the anterior portion of her left leg, and a bruise on her chest. The lacerations were sutured and Mrs. Hays was hospitalized overnight. The sutures were removed within a week of the accident and Mrs. Hays was discharged by her physician about two and one-half weeks after the accident. The record indicates that Mrs. Hays still has a scar from her left eyebrow up to her hairline. This scar was observed by the Trial Judge who stated that while it was noticeable, it was not outstanding, and awarded Mrs. Hays $1,500 for her injuries.
In addition to the awards to Mr. Hays and Mrs. Hays, individually, for the injuries they received, the Trial Court also awarded a total of $2400.55 for Mr. Hays for the special damages sustained by him and his wife. In examining the record, this- Court can find no indication that the Trial Judge abused his discretion with regard to any of the three awards and in the absence of any such abuse, we are not at liberty to increase these awards. The judgment of the Trial Court must, therefore, be affirmed with the plaintiff paying all costs of the appeal.
Affirmed.